UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————

№ 20-CV-363 (PKC) (RER)
———————————————

NATIONSTAR MORTGAGE LLC, D/B/A MR. COOPER,

Plaintiff,

VERSUS

GEORGE KADLEC,

Defendant.
———————————————

**Report & Recommendation**
———————————————

**January 11, 2021**

**To the Honorable Pamela K. Chen,
United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Nationstar Mortgage LLC, doing business as Mr. Cooper, ("Nationstar" or "Plaintiff") brings this action against George Kadlec ("Kadlec" or "Defendant") pursuant to New York Real Property Actions and Proceedings Law ("RPAPL"), Section 1301 *et seq.* (Dkt. No. 1 ("Compl.") ¶ 1). Nationstar seeks to foreclose on a mortgage encumbering the property commonly known as 18 Rock Path, Mount Sinai, NY 11766 (the "Property"), asserting that Kadlec stopped paying the mortgage on May 1, 2019. (*Id.* ¶¶ 1, 11). Nationstar requests payment due under the terms of the mortgage through foreclosure, a deficiency judgment against Kadlec, and an award of its costs and fees. (*Id.* ¶¶ 15–16; *Id.* at 17).

For the reasons set forth herein, I respectfully recommend that Your Honor grant the motion for default judgment and award Nationstar damages due under the terms of the Mortgage consisting of: the outstanding principle balance in the amount of $255,101.18; $4,328.44 for the escrow advance balance; $1,214 for the corporate advance balance; and $810 in litigation costs; plus interest calculated as set forth herein. I also respectfully recommend that Your Honor deny Nationstar's request for attorneys' fees without prejudice and with leave to renew.

**BACKGROUND**

As required by Rule 55 of the Federal Rules of Civil Procedure, the following facts are accepted as true:

1

Nationstar is a limited liability corporation incorporated under Delaware law, with its principal place of business in Dallas, Texas. (Compl. ¶ 2). Kadlec is a resident of the state of New York. (*Id.* ¶ 3). On March 18, 2004, Kadlec executed a note to GreenPoint Mortgage Funding, Inc., (Dkt. No. 1-4 ("Ex. B.") (the "Note")), and secured the loan with a mortgage on the Property, (*see* Ex. B at 3; Dkt. No. 1-5 ("Ex. C") (the "Mortgage")). The loan was modified pursuant to a loan modification agreement on April 8, 2014, which created a new balance of $275,246.70. (Dkt. No. 9 ("Pl.'s Mot.") at 56 ¶ 1). Kadlec is the only mortgagor listed on the loan documents. (Ex. B at 39; Ex. C at 4; Pl.'s Mot. at 59). He does not reside at the Property or consider it a primary residence. (Compl. ¶ 12; Pl.'s Mot. at 149).

The Note was later assigned to Plaintiff on June 13, 2019, who at this point became the primary holder of the Mortgage. (Dkt. No. 1-6 ("Ex. D") at 11; Compl. ¶ 8(b)). The assignment was recorded. (Ex. D. at 8–11). Nationstar is the owner of the Note and has the authority to institute a foreclosure and sale. (Compl. ¶ 10; Ex. D at 11).

Kadlec failed to make a monthly payment on the Note on May 1, 2019. (Compl. ¶ 11). Nationstar provided Kadlec with notice on July 22, 2019 that this failure to pay qualified as a default based on the terms of the Note and Mortgage. (*Id.* ¶ 12; Dkt. No 1-7 ("Ex. E") at 1).[1] The Notice stated that Kadlec had thirty days to cure his default and warned that failure to cure would lead to an acceleration of debt based on the terms of the Note. (Ex. E at 2).

Kadlec did not cure the default payment or otherwise respond to the Notice within the 30-day period. (Compl. ¶ 14). In response, Nationstar sought a judgment of foreclosure and sale against Kadlec for the balance outstanding under the terms of the Note, including taxes, insurance advances, and accrued interest. (*Id.* ¶¶ 1, 15). Kadlec failed to answer the Complaint or otherwise participate in the litigation; the clerk of court entered Kadlec's default into the record. (Dkt. No. 8). Nationstar then filed a motion for default judgment, (Pl.'s Mot.), which Your Honor referred to me for a report and recommendation, (Order dated 4/29/2020).

The complaint also lists several John Doe defendants who are "presently unknown" to Plaintiff but may hold leaseholds, liens, tenancies or other possessory interests on the Subject Property. (Compl. ¶ 4). None of the John Doe defendants in this suit have been identified or served with the complaint; as such I respectfully recommend they be dismissed from the case without prejudice. *See Gustavia Home, LLC v. White,* No. 16-CV-06926 (CBA) (RER), 2017 WL 6403071, at *1 (E.D.N.Y. Apr. 28, 2017), *R & R adopted by* 2017 WL 6403858 (Dec. 14, 2017).

## DISCUSSION

### I. Legal Standard

The applicable standard for a motion for default judgment comes from Rule 55 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 55; *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). A party defaults when "it has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). First, the non-defaulting party "may bring that fact to the court's attention," and the clerk of court must enter default. *Id.*; *Green*, 420 F.3d at 104.

---

[1] The Court notes that Nationstar attached to the Complaint the thirty-day notices sent to Kadlec at the Property and his Port Jefferson Station address. (Ex. E at 7–11). Nationstar attached to the motion for default judgment the thirty-day notice sent to Kadlec's last known address and the pre-foreclosure notices sent to both addresses; it does not include a copy of the thirty-day notice sent to the Property. (*See* Pl.'s Mot. at 84–99).

2

Next, the moving party may submit a motion for default judgment. FED. R. CIV. P. 55(b).

When a defendant defaults, "[a] plaintiff's factual allegations, except those relating to damages, must be accepted as true." *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (2d Cir. 2008) (citations omitted). Courts accept as true only the allegations that are well-pleaded. *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009). Although the court takes the plaintiff's well-pleaded allegations as true, the court "need not agree that the alleged facts constitute a valid cause of action." *Au Bon Pain Corp. v. Artect*, 653 F.2d 61, 65 (2d Cir. 1981). But the court must "draw all reasonable inferences" in the favor of the moving party and must subsequently determine whether the allegations establish liability. *Id.*; *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

## II. Foreclosure and Sale

The Note and Mortgage are governed by federal and New York State law. (Ex. B. at 17). Under New York law, a plaintiff establishes foreclosure and sale by showing "(1) the proof of the existence of an obligation secured by a mortgage; (2) a default on that obligation by the debtor; and (3) notice to the debtor of that default." *U.S. v. Paugh*, 332 F. Supp. 2d 679, 680 (S.D.N.Y. 2004); *Bank of Am. v. 3301 Atl.*, No. 10-CV-5204 (FB) (SMG), 2012 WL 2529196, at *9 (E.D.N.Y. June 29, 2012) (collecting cases). When the mortgage was not originated by the plaintiff, the plaintiff must also provide "proof of the plaintiff's valid and current ownership of the instruments" in order to establish prima facie entitlement to foreclosure. *Miss Jones v. McCormick*, No. 16-CV-7129 (WFK) (RER), 2017 WL 4877437, at *2 (E.D.N.Y. Aug. 9, 2017), *R & R adopted by* 2017 WL 4898278 (Oct. 27, 2017).

A plaintiff can prove an obligation by showing the "existence of the debt" and that "the Note is secured by the mortgage." *See Paugh*, 332 F. Supp. 2d at 681. Nationstar provided a signed copy of the Note discussing the terms of the mortgage, the Mortgage, and the later modified loan agreement as attachments to the Complaint. (Exs. B, C, D; *see also* Pl.'s Mot. at 16–19, 45–54, 56–59). The Mortgage includes a physical description of the Property which Kadlec used to secure the Note. (Ex. B at 3, Schedule A; Pl.'s Mot. at 25, 27). I find that these documents taken together prove the existence of the debt owed by Kadlec.

Nationstar also supplied records showing that the Note was initially originated by Greenpoint Mortgage but was assigned to the Federal National Mortgage Association on or about January 21, 2013 before being assigned to Nationstar on or about June 13, 2019. (Ex. D; Pl.'s Mot. at 45–54). The assignment to Nationstar was recorded on June 28, 2019. (Ex. D at 8–12). I find that this documentation proves that Nationstar owns the Note and satisfies the valid and current ownership requirement. *See Miss Jones*, 2017 WL 4877437, at *2.

Under the terms of the Note, the borrower defaults when he "[does] not pay the full amount of each monthly payment on the date it is due." (Ex. C at 2). To prove default, Nationstar must submit more than a conclusory allegation and include "some proof in the form of an affidavit of a person with knowledge, or a complaint verified by a person with knowledge." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 79 (E.D.N.Y. 2019) (quoting *Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp. 2d 367, 371 (S.D.N.Y. 2007)). Nationstar provides a sworn affidavit from a Document Execution Associate, (Pl.'s Mot. at 8–14), as well as business records for the Property "created and maintained by [Nationstar] in

3

the ordinary course of business," (*Id.* at 61–82, 103–128). These records confirm the existence of the Note and Mortgage and Kadlec's failure to make a regular monthly payment on May 1, 2019. (Pl.'s Mot. at 9–10, 61). I find this sufficient to establish a default in this case.

Lastly, Nationstar must prove that they provided Kadlec with notice of his default. *See Gustavia Home*, 362 F. Supp. 3d at 79–80 (quoting *Paugh*, 332 F. Supp. 2d at 680). Under the Note, Kadlec is entitled to a thirty-day notice of default and demand to cure. (Ex. C. at 2). Notice must be sent by first class mail to the Property or to another address if provided. (*Id.*). The RPAPL requires notice to the mortgager in addition to "any tenant of a dwelling unit" in a mortgage foreclosure action. N.Y. REAL PROP. ACTS. § 1303(1)(b) (McKinney 2016). Further, a party foreclosing against a borrower must provide notice at least ninety days before commencing legal action. N.Y. REAL PROP. ACTS. § 1304 (McKinney 2018). But this requirement only applies to home loans, which must be the borrower's "principal dwelling" or primary residence. *See Bank of Am. v. Diaz*, 75 N.Y.S. 3d 147, 150 (N.Y. App. Div. 2018).

Nationstar alleges that the Property is not Kadlec's primary residence and as such, they did not need to provide 90-day notice under section 1304 because the Property was a "second home". (Compl. ¶ 12). In support of the allegation, Nationstar provides a third-party, sworn affidavit from a non-party who visited the Property on February 10, 2020 and attested that it was vacant. (Pl.'s Mot. at 149). Moreover, although Section 6 of the mortgage includes a provision that the borrower "will occupy the Property and use the Property as [a] principle residence" for at least one year commencing within sixty days of signing the Mortgage, the 1-4 Family Rider attached states that "Section 6 concerning Borrower's occupancy of the Property is deleted." (Ex. B at 12, 23). Therefore, because the Property was not a primary residence and was vacant, I find that Nationstar had no obligation to comply with sections 1304 or 1303(1)(b) of the RPAPL.

Nationstar, through its employee, a Dedicated Loan Specialist, sent Kadlec default notices, (Ex. E; Pl.'s Mot. at 84–87), and pre-foreclosure notices, (Pl.'s Mot. at 88–97). Nationstar provides receipts showing that the default notices and pre-foreclosure notices were sent via first class and certified mail, both to Kadlec's last known home address in Port Jefferson, New York and to the Property on July 22, 2019. (Pl.'s Mot. at 98–99).[2] The mail notified Kadlec about his unpaid mortgage contribution, including the amount due, and warned Kadlec that failure to pay within thirty days would constitute a default and could result in foreclosure of the Property. (*E.g.*, Ex. E; Pl.'s Mot. at 93–97). Nationstar commenced this action on January 22, 2020—well over ninety days after giving notice. (*See* Dkt. No. 1).

For the foregoing reasons, I find that Nationstar has established that they provided Kadlec with adequate and timely notice of his default. Therefore, I respectfully recommend the Judgment of Foreclosure and Sale be granted, as detailed in the proposed judgment with proceeds to be applied against the amounts owed on the Note as described below. (*See* Dkt. No. 9-1); *see also E. Sav. Bank, FSB v. Robinson*, No. 13-CV-7308

---

[2] Nationstar provides an affidavit stating that they followed standardized mailing practices and mailed Kadlec at his last known address in Port Jefferson Station, as well as at the Property. (Pl.'s Mot. at 12). Under the Mortgage, notices are considered given if mailed by first class mail or actually delivered to the address listed on the first page of the mortgage—114 Hickory Street, Port Jefferson Station, New York 11776. (Ex. B at 4, 16).

4

(ADS) (SIL), 2016 WL 3365091, at *11 (E.D.N.Y. May 9, 2016) (citing *OneWest Bank v. Denham*, No.14-CV-5529 (DRH) (AKT), 2015 WL 5562980 at *14 (E.D.N.Y. Aug. 31, 2015), *R & R adopted by* 2015 WL 5562981 (Sept. 21, 2015)), *R & R adopted by* 2016 WL 3102021 (June 2, 2016).

### III. Damages

To determine damages in a motion for default judgment, courts do not accept the plaintiff's allegations at face value. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). While Rule 55(b)(2) of the Federal Rules of Civil Procedure allows for a hearing, the Second Circuit has held that additional hearings are unnecessary if there is some basis in the plaintiff's documentation for the damages sought. *Id.*; *see* FED. R. CIV. P. 55(b). Examples of proper documentation for damages include detailed affidavits and other documentary evidence. *See Transatlantic*, 109 F.3d at 111 (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir.1993)).

Given the detailed business records that Nationstar attached to the motion for default judgment and the affidavit in support of those records, I find that a hearing to determine damages is not necessary. *See E. Sav. Bank, FSB v. Beach*, No. 13-CV-341 (JS) (AKT), 2014 U.S. Dist. LEXIS 31700, at *24–26 (E.D.N.Y. Feb. 12, 2014) (relying on the borrower's transaction history and the affidavit of a senior asset manager who examined business records to establish the amount due), *R & R adopted by* 2014 U.S. Dist. LEXIS 31523 (March 10, 2014).

I respectfully recommend that Nationstar be awarded damages in the amount of $261,453.62 plus interest calculated as described below.

### A. Amount Due under the Mortgage

Under the Mortgage, Nationstar may recover the principal due on the mortgage, any interest accrued up until the principle and interest are paid in full, taxes, corporate advances, and escrow advances, including mortgage insurance and hazard insurance premiums. (Ex. B at 9–11, 14, 16, 19; Ex. C at 2; Pl.'s Mot. at 56, 58).

Nationstar seeks the amount due under the mortgage for a total of $271,264.08. (Pl.'s Mot. at 5, 13). To support this amount, Nationstar provides business records detailing transactions related to the Property. (*Id.* at 61–82; 103–28). The records include a list of transactions associated with Kadlec's loan account, as well as worksheets calculating the outstanding balances and collectable amounts. (*Id.*). Nationstar also provides the affidavit of a Document Execution Associate who, based on personal knowledge and a review of the business records, maintains that the total amount due to Plaintiff is $271,264.08. (*Id.* at 12).

Nationstar alleges that the outstanding principle balance totals $255,101.18. (Dkt. No. 9-1 at 1; *see, e.g.*, Pl.'s Mot. at 10, 12, 61, 69, 126). After careful review of the record, I find this amount reasonable.[3]

Nationstar seeks an escrow advance balance in the amount of $4,328.44, which

---

[3] The Business records indicate that the outstanding loan balance as of March 2019 was $255,650.82. (Pl.'s Mot. at 82, 123). Accepting this balance as accurate, and at the interest rate of 4.625% per annum, (Pl.'s Mot. at 56), the daily interest payment is approximately $32.32 for 2019. (($255,101.18 ✗ .04625) / 365 = $32.32). Daily interest for March and April 2019 amounts to $1,001.92 and $969.60, respectively. (31 days ✗ $32.32 = $1,001.92 and 30 days ✗ $32.32 = $969.60). Each month, the regular payment towards principle and interest was $1,259.61. (Pl.'s Mot. at 56, 104). In sum, this amounts to an

5

includes amounts owed for hazard insurance, taxes, and mortgage insurance premiums. (Pl.'s Mot. at 13, 126). After careful review of Nationstar's business records, I find this amount reasonable.[4]

Nationstar seeks a corporate advance balance in the amount of $1,259, which includes amounts owed for property inspections and property preservation or maintenance. (Pl.'s Mot. at 13, 126). After careful review, I find that several payments were posted to Kadlec's account more than one year after they came due without explanation. (*See id.* at 122–23). Therefore, I respectfully recommend $1,214 as a more reasonable award.[5]

Lastly, Nationstar seeks accrued interest due on the Note and Mortgage from default until the time of the payment of monies from a foreclosure sale. (Compl. at 7). In its Motion, Nationstar does not provide an accounting of the daily interest amount due, but seeks $10,575.46 in total interest through February 24, 2020, which "may be less than what is legally owed." (Pl.'s Mot. at 13).

Under the loan modification agreement, interest accrues at a rate of 4.625% per annum and Kadlec agreed to make principle and interest payments "until principle and interest are paid in full." (Pl.'s Mot. at 56, 127). Given the outstanding principle balance of $255,101.18, I calculate daily interest due to be $32.32 for the years 2019 and 2021, and $32.24 for 2020.[6] I respectfully recommend that the Court award Nationstar the requested $10,575.46 in total interest due through February 24, 2020,[7] plus an additional $10,382.16 in interest for the period of February 25, 2020 through today, and ongoing daily interest of $32.32 through the date of the foreclosure sale. The total amount of interest due to date is $20,957.62.

---

outstanding balance on May 1, 2019 of approximately $255,103.12.

The Court also made efforts to independently reach the March 2019 balance by accounting for payments made and interest accrued since the 2014 loan modification. The balance that the Court calculated was at least $1,502.42 higher than the number provided in the billing records. As such, the Court respectfully recommends awarding Nationstar's lower, requested amount. *See* FED. R. CIV. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

[4] Nationstar requests reimbursement of advances for hazard insurance ($1,204.35), mortgage insurance premiums ($229.35), and taxes ($2,894.74). (Pl.'s Mot. at 13, 126). The business records confirm an advance of hazard insurance in the amount of $1,207.83 on 5/23/2019. (Pl.'s Mot. at 121, 124). This amount is slightly higher than Nationstar's requested amount, and I respectfully recommend awarding only the requested amount. *See* FED. R. CIV. P. 54(c). The records also show five transactions for mortgage insurance, each $45.87 ($45.87 x 5 = $229.35). (Pl.'s Mem at 181–21, 124). Lastly, the records support a town tax advance on 12/18/2019 in the amount of $2,894.74. (Pl.'s Mem at 181, 124).

[5] Nationstar seeks $144 for property inspections and $1,115 for property preservation or maintenance. (Pl.'s Mot. at 13, 106–07, 125). The Court assumes that the worksheets Nationstar provides form the basis of its request. (*See id.* at 125). The tables in the Appendix list the relevant transactions that the Court could confirm from the business records. In addition to the transactions listed in the Appendix, Nationstar's worksheet includes inspections that occurred on 12/6/2017 (Transaction No. 15), 11/1/2017 (Transaction No. 18), and 1/3/2018 (Transaction No. 14). (*Id.* at 122–23, 125). I cannot discern why payments effective in 2017 and 2018 were not posted until 2019. (*See id.* at 122–23). Because Nationstar does not provide any explanation for this delay, I recommend that the Court not award damages for those transactions.

[6] ($255,101.18 x .04625) / 366 = $32.24

[7] I calculate this amount to be $10,661.20 ((275 x $32.32) + (55 x $32.24)). Nationstar, however, should be awarded the lesser amount that it seeks.

6

B. Litigation Costs

Under the Mortgage and Note, Nationstar is entitled to costs and expenses associated with enforcing the Note. (Ex. B. at 9; Ex. C at 2). Litigation costs include "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients." *See Robinson*, 2016 WL 3365091, at *10 (citing *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). Nationstar "bears the burden of adequately documenting and itemizing the costs requested." *Id.* (quoting *Ganci v. U.S. Limousine Serv. Ltd.*, No. 10-CV-3027 (JFB) (AKT), 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015)).

Nationstar seeks $1,085 in damages for litigation costs. (Pl.'s Mot. at 166, 174). This includes $400 for the filing fee, $190 for service of process, $275 for a title search, and $220 in filing fees for the notice of pendency. (Pl.'s Mot. at 166). Plaintiff provides receipts proving all above expenditures other than the title search. (*Id.* at 167–70).[8] As such, I respectfully recommend that the Court award Nationstar $810 in litigation costs.

C. Attorneys' Fees

Nationstar is entitled to reasonable attorney's fees under the Mortgage and Note. (Ex. B. at 9; Ex. C at 2). The Second Circuit considers a fee presumptively reasonable when it is the product of a reasonable hourly rate and a reasonable number of hours worked. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany*, 522 F.3d 182, 190 (2d Cir. 2008). Courts have discretion to take account of case-specific variables but should primarily rely on what a reasonable, "paying client would be willing to pay" to effectively litigate the case in the Eastern District. *Arbor Hill*, 522 F.3d at 190. In this District, reasonable legal fees range between $300 to $450 per hour for work done by partners, $200 to $325 per hour for senior associates, and $70 to $100 per hour for paralegals. *CIT Bank, N.A. v. Elliot*, 15-CV-4395 (JS) (ARL), 2019 U.S. Dist. LEXIS 126088, at *9 (E.D.N.Y. July 25, 2019), *R & R adopted* by 2019 U.S. Dist. LEXIS 159753 (Sept. 17, 2019); *Bond v. Welpak Corp.*, No. 15-CV-2403 (JBW) (SMG), 2017 WL 4325819, at *5 (E.D.N.Y. Sept. 26, 2017). Plaintiffs in cases involving mortgages and promissory notes are generally awarded fees at the lower end of the range. *Beach*, 2014 WL 923151, at *13 (quoting *E. Sav. Bank, FSB v. Bright*, No. 11-CV-1721 (ENV) (MDG), 2013 U.S. Dist. LEXIS 91778, at *11 (E.D.N.Y. March 21, 2013), *R & R adopted by* 2013 U.S. Dist. LEXIS 90815 (June 27, 2013)).

The Second Circuit then requires judges to use their experience to assess the reasonableness of hours expended in each case and to exclude hours that are "excessive or duplicative" or "not reasonably expended." *U.S. Bank, N.A. v. Byrd*, 854 F. Supp. 2d 278, 287 (E.D.N.Y. 2012) (quoting *LeBlanc–Sternberg*, 143 F.3d at 756, 764 (2d Cir. 1998); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quotations omitted)). The party seeking the award must produce detailed documentation to support its request. *Id*. This documentation, especially when involving a flat-rate attorney's fee, should be contemporaneous and specify relevant dates, time spent, and work done. *Denham*, WL 5562980 at *10; *Nationstar Mortg. LLC v. Fernandez*, No. 17-CV-404 (DRH) (SIL),

---

[8] The Court notes that Nationstar's business records include a transaction for a title examination in the amount of $275. (Pl.'s Mot. at 70). However, the Court cannot discern whether it is appropriate to award this amount, in part because there were other title examinations that occurred after the default date ranging in cost from $5 to $350. (Pl.'s Mot. at 72, 73). Without further explanation from Nationstar, I respectfully recommend that the Court does not award this amount.

7

2017 WL 6767239, at *7 (E.D.N.Y. Nov. 21, 2017) (quoting *Mack Fin. Servs. v. Poczatek*, No. 10-CV-3799 (JS) (AKT), 2011 WL 4628695, at *10 (E.D.N.Y. Aug. 30, 2011) (quotations omitted), *R & R adopted in relevant part by* 2011 WL 4628692 (Sept. 30, 2011)), *R & R adopted by* 2018 WL 262837 (Jan. 2, 2018), *vacated in part*, 2018 WL 3424452 (Mar. 20, 2018) (vacating the judgement after it was satisfied).

Nationstar requests attorney's fees in the amount of $5,225. (Pl.'s Mot. at 173). This amount is based on the flat rate that its counsel from RAS Boriskin, LLC charges for foreclosure cases. (*Id.*). Attorney of record Joseph F. Battista ("Battista") is an associate of RAS Boriskin, LLC. (*Id.* at 172). Battista has been practicing law since 2000 and has eighteen years of experience with foreclosure proceedings. (*Id.* at 174). He has an average hourly rate of $215 based on the flat rate that his firm charges. (*Id.* at 173–74). However, for this case, the rate requested amounts to approximately $240 per hour.[9]

Battista provides a list of work performed and time spent on each task but elected not to provide dates on which the tasks were performed. (Pl.'s Mot. at 173). The Court can roughly assess the dates for each task based on the information located on the ECF docket. *See Denham*, 2015 WL 5562980, at *11. But the listed times spent "are averages based on volume," and not representative of the time actually spent litigating Nationstar's case. (Pl.'s Mot. at 173). I find this insufficient to meet the Second Circuit's requirements because "the work required in this matter may have been less than the typical case since it has not been contested by any Defendant." *Nationstar Mortg. LLC v. Mullany,* No. 16-CV-5501 (ADS) (AYS), 2018 WL 4658437, at *6 (E.D.N.Y. Sept. 11, 2018), *R & R adopted by* 2018 WL 4637352 (E.D.N.Y. Sept. 27, 2018).

Battista also did not denote who performed the tasks or indicate whether he had the assistance of a paralegal. He merely provided "an itemization of the services *rendered by this firm* . . . to date and anticipated time through sale." (Pl.'s Mot. at 174 (emphasis added)). Tasks such as arranging for service of summons, electronically filing case documents, and requesting the clerk's certificate of default could certainly be performed by someone with less experience than Battista. *See, e.g.*, *Bond*, 2017 WL 4325819, at *8 ("[T]ime spent for work that could have been performed by paraprofessional staff is not compensable at an attorney's hourly rate."). Moreover, Battista erroneously requests fees for activities that have not yet occurred— namely publication, appearance at the foreclosure sale, and preparation of supporting documentation. *See Fernandez*, 2017 WL 6767239, at *7.

Because of the deficiencies identified in Battista's declaration of services rendered, I cannot find that the amount requested is presumptively reasonable. I respectfully recommend that Your Honor deny Nationstar's requests for attorney's fees without prejudice and with leave to renew upon supplemental submission of appropriate supporting documentation. *See Fernandez*, 2017 WL 6767239, at *7; *OneWest Bank, N.A. v. Hawkins*, No. 14-CV-4656 (NGG) (CLP), 2015 WL 5706945, at *12 (E.D.N.Y. Sept. 2, 2015), *R & R adopted by* 2015 WL 5706953 (E.D.N.Y. Sept. 28, 2015).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Your Honor grant the

---

[9] $5,225 / 21.75 = $240.23

8

requested foreclosure and sale in a form substantially similar to the Proposed Judgment. With respect to damages, I respectfully recommend that the Court award Nationstar damages as follows: the outstanding principle balance in the amount of $255,101.18; accrued interest in the amount of $20,957.62; $32.32 in daily interest to the date of the foreclosure sale; $4,328.44 for the escrow advance balance; $1,214 for the corporate advance balance; and $810 in litigation costs. I respectfully recommend that Your Honor deny Nationstar's request for attorney's fees without prejudice and with leave to renew.

Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendant by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Pamela K. Chen within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**RESPECTFULLY RECOMMENDED.**

*Ramon E. Reyes Jr.*
Ramon E. Reyes, Jr.
U.S. Magistrate Judge
Dated: January 11, 2021

## APPENDIX

### IV. Chargeable Transactions for Corporate Advances[10]

**Property Inspections**

| Amount | Effective Date | Transaction No. |
|---|---|---|
| $26 | 1/6/2020 | 69 |
| $22 | 11/21/2019 | 65 |
| $22 | 8/15/2019 | 50 |
| $14 | 7/17/2019 | 43 |
| $15 | 2/14/2019 | 13 |
| **$99** | | |

**Property Preservation and Maintenance**

| Amount | Effective Date | Transaction No. | Purpose |
|---|---|---|---|
| $200 | 2/8/2020 | 76 | Maintenance/Yard |
| $200 | 11/9/2019 | 64 | Maintenance/Yard |
| $240 | 10/11/2019 | 58 | Maintenance/Yard |
| $140 | 8/25/2019 | 53 | Winterization |
| $200 | 8/25/2019 | 52 | Land Initial |
| $125 | 8/6/2020 | 47 | Locksmith |
| $10 | 7/21/2019 | 46 | Repairs |
| **$1,115** | | | |

---

[10] Information based on Nationstar's business records attached to the motion for default judgment. (Pl.'s Mot. at 61–82, 103–128).